IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN MATTOLA, Individually | : | CIVIL ACTION |
| and as Administratrix of the Estate | : | |
| of Maria L. Mercado, Deceased, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-0506 |
| | : | |
| THE READING HOSPITAL AND | : | |
| MEDICAL CENTER, et al.[1] | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                          March 1, 2010

Carmen Mattola brings this medical malpractice action individually and as administratrix[2] of the estate of Maria L. Mercado, her deceased mother, who died while recovering from a knee operation at the defendant's transitional care center. Questioning the complete diversity of the parties, the defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the following reasons, I will grant the motion.

---

[1] The Reading Hospital and Medical Center correctly points out that it is the only properly-named defendant in this action. The Post-Acute Continuum and the Transitional Care Center are not legal entities separate from the Reading Hospital and Medical Center. As such, I will strike them as defendants in this action, and refer to the defendant in the singular.

[2] The record contains a petition for grant of letters filed by Miss Mattola with the Register of Wills of Berks County. On February 3, 2009, the Register of Wills granted the petition acknowledging Miss Mattola as the administratrix of her mother's estate. See Document #6-4.

## I. BACKGROUND

Mrs. Mercado suffered from severe obstructive sleep apnea[3] and was prescribed a device known as a CPAP[4] which is worn during sleep to assist in breathing. On January 29, 2007, when Mrs. Mercado entered the defendant hospital for a total right knee arthroplasty, she brought the CPAP and informed the hospital staff of her need to employ the device during sleep. See Compl. ¶¶ 12-14.

On February 2, 2007, a few days after the operation, Mrs. Mercado was discharged from the defendant hospital and transferred to its Transitional Care Center for further monitoring and rehabilitation services. Id. ¶ 16. She brought the CPAP device with her to the center. Id. At the time of her transfer, Mrs. Mercado's medical record contained orders from her treating physicians at the defendant hospital indicating the need for her continual use of the CPAP device during sleep as a required treatment of her sleep apnea. Id. ¶ 20. While at the center, however, Mrs. Mercado was permitted to refuse to wear the CPAP device during sleep despite the treating physicians' orders. Id. ¶ 21. On the evening of February 4, 2007, the staff at the center did not give Mrs. Mercado the CPAP

---

[3] Sleep Apnea is defined as a potentially lethal disorder in which breather stops during sleep for ten seconds or more, sometimes more than three hundred times per night. It can be obstructive (upper airway blockage despite airflow drive), central (decreased respiratory center output) or mixed. The Merck Manual, 15th ed. (1987) at 1379-1380.

[4] A CPAP, also known as "continuous positive airway pressure," is a device which employs a method of positive pressure ventilation with patients who are breathing spontaneously, done to keep the alveoli open at the end of exhalation and thus increase oxygenation and reduce the work of breathing. When the same principle is used in mechanical ventilation, it is called positive end-expiratory pressure. See www.mercksource.com.

device, and they allegedly did not monitor her sleep during the night specifically for the complications arising from the sleep apnea. Id. ¶ 22. At 4:30 the next morning, Mrs. Mercado was found cold and unresponsive, and pronounced dead a few minutes later. Id. ¶ 23.

The plaintiff subsequently filed this complaint including various counts of negligence, a wrongful death count, and a survival action count.

## II. STANDARD OF REVIEW

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Facial attacks contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true. Dismissal under a facial challenge is proper only when the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir. 1991).

In contrast, a trial court considering a factual attack, i.e., an attack based on the sufficiency of jurisdictional fact, accords a plaintiff's allegations no presumption of truth. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002). Where subject matter jurisdiction "in fact" is challenged, the trial court's very power to hear the case is at issue, and the court is therefore "free to weigh the evidence and satisfy itself as to the power to hear the case." Mortensen v. First Federal Savings and Loan Assoc., 549

3

F.2d 884, 891 (3d Cir. 1977).

With respect to a factual challenge, a court is not limited to considering only the allegations on the face of the complaint. Carpet Group Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)). Review is not confined to the allegations in the complaint and courts can look beyond the pleadings to decide factual matters relating to jurisdiction. Cestonaro v. United States, 211 F.3d 749, 754 (3d Cir. 2000). Additionally, because no presumptive truthfulness attaches to the allegations in the complaint, disputed material facts do not prevent the court from evaluating the merits of the lack of jurisdiction claims. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The court is free to weigh the evidence and satisfy itself whether it has the power to hear the case. Carpet Group, 227 F.3d at 69.

## III. DISCUSSION

In its motion to dismiss, the defendant is challenging the court's subject matter jurisdiction.[5] Although the complaint bases the court's jurisdiction upon the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(1),[6] the defendant argues that complete diversity of citizenship does not exist. I am constrained to agree.

---

[5] The jurisdiction of federal district courts is limited: it only can be exercised over civil actions that arise under federal law, i.e., federal question jurisdiction, or those that arise between citizens of different states where the matter in controversy exceeds $75,000, i.e., diversity jurisdiction. See 28 U.S.C. §§ 1331 and 1332(a).

[6] I note that it is apparent from the face of the complaint that this matter was not created by federal law, and thus does not fall under the court's federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

4

In order to sustain jurisdiction based on diversity of the parties, there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Employers Ins. of Wausau v. Crown Cork and Seal Co., 905 F.2d 42, 45 (3d Cir. 1990); see also Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., 316 F.3d 408, 410 (3d Cir. 2003) (no plaintiff can be a citizen of the same state as any of the defendants).

Here, Miss Mattola alleges that she is a citizen of the state of New York. The defendant concedes that it is a citizen of the Commonwealth of Pennsylvania. At first blush, it would seem that the citizenship of the parties is diverse. There is a complicating factor, however, which makes diversity jurisdiction not so clear. Miss Mattola not only brings this case individually, but also as administratrix of the estate of her mother. The legal representative of a decedent's estate is deemed to be a citizen only of the same state as the decedent. See 28 U.S.C. § 1332(c)(2).[7] Miss Mattola concedes that at the time of her death, Mrs. Mercado was a citizen of the Commonwealth of Pennsylvania. See Document #9 at 2. Accordingly, the citizenship of Miss Mattola in any action brought as administratrix of the estate of her mother would be that of her mother, i.e., Pennsylvania. This fact, according to the defendant, is fatal to the court's jurisdiction because it destroys

---

[7] 28 U.S.C. § 1332(c)(2) provides: "The legal representative of the estate of a decedent shall be deemed to be a citizen *only* of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen of only the same State as the infant or incompetent." (emphasis added).

5

complete diversity of citizenship.

As Miss Mattola correctly points out, this case is distinguishable from the cases cited by the defendant in support of its position. In <u>Walls, et al. v. Ahmed, et al.</u>, the court was asked to determine the citizenship of a deceased woman who had just left the state of New Jersey by automobile to begin a new life in the state of Florida where she had purchased a house. 832 F.Supp. 940 (E.D. Pa. 1993). She was involved in a multi-vehicle accident in Pennsylvania and was killed. <u>Id.</u> at 941. The case was brought by the deceased woman's son and by Yvonne Walls in her capacity as executrix of the deceased's estate, against several defendants who were citizens of New Jersey and Pennsylvania. <u>Id.</u> The court determined that the deceased had established a significant and lasting physical presence in Florida, and had abandoned her home in New Jersey. <u>Id.</u> at 943. In deciding that there was complete diversity among the parties, the court noted that, although Miss Walls was a resident of New Jersey, she was deemed to be a citizen of Florida pursuant to 28 U.S.C. § 1332(c)(2). The distinguishing factor is that Miss Walls brought the case solely as executrix of the estate and not in her capacity as an individual, as Miss Mattola did here.

In another case cited by the defendant, a son brought an action as executor of his deceased father's estate against the woman whose car struck and killed the father. <u>Nercesian v. Johnson</u>, 2002 U.S. Dist. LEXIS 1835 (E.D. Pa. February 7, 2002). The defendant was a citizen of Pennsylvania. <u>Id.</u> at *1. The deceased had lived for many

years in Pennsylvania, then moved to New Jersey in 1997. Three weeks before his death in November 2000, the deceased returned to live in Pennsylvania with another son three miles from the father's new job. Id. at *5. The case was filed in federal court based on the diverse citizenship of the parties. The court determined that, at the time of his death, the deceased was a citizen of Pennsylvania. Because complete diversity did not exist, the court dismissed the action for lack of subject matter jurisdiction. Id. at *11. The citizenship of the executor-son played no role in the court's decision.

Although the cases cited can be distinguished from this action, the basic principle remains the same: the legal representative of a decedent's estate is deemed to be a citizen only of the same state as the decedent. See 28 U.S.C. § 1332(c)(2). Notwithstanding the ability of Miss Mattola to have brought a wrongful death action[8] individually as the daughter of the deceased, the citizenship of her mother destroys complete diversity of citizenship, and accordingly deprives the court of subject matter jurisdiction.

In conclusion, a troubling aspect of this case is that it was filed on the day before the expiration of the statute of limitations. See 42 Pa.C.S. § 5524(2) (stating that a two-year statute of limitations applies to an action to recover damages for injuries or

---

[8] Title 42 of the Pennsylvania Consolidated Statutes Annotated, Section 8301, provides: (a) GENERAL RULE -- An action may be brought . . . to recover damages for the death of an individual caused by the wrongful act or neglect . . . or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime . . . ; (b) BENEFICIARIES -- . . . the right of action created by this section shall exist only for the benefit of the spouse, **children** or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. (Emphasis added).

death to a person resulting from the wrongful act or negligence of another). In a probable effort to preserve the timeliness of her claims, the plaintiff asks that rather than dismiss the case, I remand it to the Court of Common Pleas of Berks County pursuant to Rule 213(f)[9] of the Pennsylvania Rules of Civil Procedure. Because this case was not removed from state court and because this court is without jurisdiction, remanding the case is not an option. Accordingly, I will grant the defendant's motion, and dismiss the case without prejudice to the plaintiff's right to pursue her claims in state court pursuant to 42 Pa.C.S. § 5103(b)[10] by filing the appropriate certifications in the Court of Common Pleas of Berks County.

An appropriate Order follows.

---

[9] Rule 213(f) provides: "When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred."

[10] Pennsylvania law provides for the transfer of erroneously filed matters so that when a matter is brought in a court of the Commonwealth which does not have jurisdiction, the court can transfer the record to the proper tribunal, where the matter would be treated as if originally filed in the transferee tribunal on the date when the matter was first filed. See 42 Pa.C.S. § 5103(a). This provision also applies in order to preserve a claim originally brought in a United States court. Where a matter is filed in any United States court in Pennsylvania and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2). See 42 Pa.C.S. § 5103(b)(1). Section (2) provides that such a transfer may be effected by filing a certified transcript of the final judgment of the United States court. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court may require that they be amended to conform to the practice in this Commonwealth. See 42 Pa.C.S. § 5103(b)(2).